UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
CLAUDE REESE,

          Plaintiff,

    -against-                    **COMPLAINT**

ROBERT WILLIAMSON,
STEVEN DRAPALA,              Plaintiff Demands a
RICHARD BODNAR,               Trial by Jury
JUSTIN FRIEDLANDER,
CLIFFORD DONOVAN,
DANNY LAWRENCE,
JOSEPH BURNS,
ROBERT GARCIA,
MICHAEL PADGETT,
GLENROY RILEY and
ANDREW MILYKO,

          Defendants.
---------------------------------X

      Plaintiff, by his attorneys Sivin, Miller & Roche, LLP, complaining of defendants, alleges as follows, upon information and belief:

### THE PARTIES AND JURISDICTION

      1.  That at all times herein mentioned, plaintiff was and is a citizen of the State of New York.

      2.  That at all times herein mentioned, plaintiff was incarcerated at Otisville Correctional Facility (Otisville), in Otisville, NY, located within the Southern District of New York, and was under the care, custody, and control of the New York Department of Corrections and Community Supervision (DOCCS).

      3.  That at all times herein mentioned, defendants were and are citizens of the State of New York.

4. That at all times herein mentioned, defendants Robert Williamson (Williamson), Steven Drapala (Drapala), Justin Friedlander (Friedlander), Clifford Donovan (Donovan), Danny Lawrence (Lawrence), Joseph Burns (Burns), Robert Garcia (Garcia), Michael Padgett (Padgett), and Andrew Milyko (Milyko) were correction officers employed at Otisville by DOCCS.

5. That at all times herein mentioned, defendants Richard Bodnar (Bodnar) and Glenroy Riley (Riley) were sergeants employed at Otisville by DOCCS.

6. That at all times herein mentioned, all of the defendants acted within the course and scope of their employment at Otisville by DOCCS.

7. That at all times herein mentioned, all of the defendants acted under color of state law.

## FACTS

### Events Preceding May 1, 2020

9. As of May 1, 2020, plaintiff was scheduled to be paroled from DOCCS custody on or about May 7, 2020.

10. Shortly before May 1, 2020, while he was incarcerated at Otisville, plaintiff contracted the Covid-19 virus and was suffering from symptoms of the virus.

11. In the days immediately preceding May 1, 2020, plaintiff and members of plaintiff's family made repeated complaints to officials at Otisville, including but not limited to Lieutenant Richard Flessa (Flessa), regarding the conditions of plaintiff's confinement at Otisville, and specifically relating to the manner in which staff at Otisville was responding to plaintiff's illness.

12. In the days immediately preceding May 1, 2020, staff at Otisville, including but not limited to Flessa, verbally expressed their displeasure at plaintiff for the aforementioned complaints made by plaintiff and his family about the conditions of plaintiff's confinement.

13. In the days immediately preceding May 1, 2020, staff at Otisville, including but not limited to Flessa, warned plaintiff that he and his family should stop making complaints about the conditions of his confinement, and that there would be adverse consequences to him, including a delay in his release from DOCCS custody, if the complaints did not stop.

**The May 1, 2020 Use-of-Force Incidents**

14. On May 1, 2020, while he was housed at Otisville in a makeshift housing unit which was part of Housing Unit 118-2 and was set up for incarcerated individuals who had tested positive for the Covid-19 virus, plaintiff was advised that correction officers, including Officer Williamson, were inquiring about him, and that Williamson was requesting that plaintiff exit his housing unit so that Williamson could speak with him.

15. Fearing that Williamson and the other officers intended to cause physical harm to him, plaintiff declined to exit his housing unit, and instead entered a telephone booth in the housing unit and placed a phone call to his wife to alert her in real time as to what was occurring.

16. While plaintiff was engaged with his wife in the telephone conversation, Officer Williamson, together with Officer Drapala, entered plaintiff's housing unit and, without justification, forcibly grabbed plaintiff, dragged him from the

phone booth to a stairwell and slammed him against a wall, and Williamson then placed plaintiff in handcuffs.

17. Officers Williamson, Drapala, Friedlander, Donovan, and Lawrence, together with Sgt. Bodnar, again without any legal justification, then stomped, kicked, and punched plaintiff multiple times.

18. During the course of the physical attack on plaintiff, Williamson stated to plaintiff, in sum and substance, "You were told to shut the fuck up, and you didn't listen; now this is what you get."

19. While plaintiff remained in handcuffs, Williamson and Bodnar then threw plaintiff down the stairwell.

20. After being thrown down the stairwell, plaintiff was kicked again by an officer whom plaintiff has not been able to identify.

21. Plaintiff then was transported by van from his housing unit to a holding area at Housing Unit 121-2 at Otisville.

22. After he arrived at the holding area, plaintiff again without justification was physically attacked by officers; specifically, plaintiff was choked into unconsciousness by Officer Friedlander, and then when he regained consciousness, plaintiff was punched, kicked, and slammed against a bed by Friedlander, Burns, Garcia, and Padgett.

23. Sgt. Riley and Officer Milyko were present during this attack in the holding area, observed the illegal use of force by their fellow officers, and had reasonable opportunities to intervene to prevent and/or stop this illegal use of force.

24. Despite having had reasonable opportunities to intervene to prevent and/or stop this illegal use of force by their fellow officers, Riley and Milyko deliberately failed and refused to intervene, thereby allowing the attack to continue.

25. The remaining defendants also deliberately failed and refused to intervene to prevent and/or stop any of the aforementioned illegal uses of force by their fellow officers, despite having had reasonable opportunities to do so.

26. As a result of the aforementioned uses of force, plaintiff sustained multiple and severe personal injuries, including but not limited to multiple lacerations and bruises to the face and injuries to the neck and back.

**The False Misbehavior Reports**

27. On May 1, 2020, following the aforementioned events, Officer Williamson authored an Inmate Misbehavior Report in which he knowingly made false accusations against plaintiff, including that plaintiff physically assaulted Williamson and that plaintiff intentionally coughed on other officers in an attempt to infect them with the Covid-19 virus.

28. On May 1, 2020, Officer Friedlander authored another Inmate Misbehavior Report in which he knowingly made false accusations against plaintiff, including that plaintiff physically assaulted and also spat on Friedlander.

29. Williamson and Friedlander issued these false Misbehavior Reports against plaintiff not because they believed plaintiff was guilty of the offenses with which he was charged, but instead (i) as retaliation against plaintiff for having exercised his First Amendment right of free speech and his First Amendment right to petition the government for redress of grievances when plaintiff complained about his conditions of

confinement at Otisville as alleged above; and (ii) to cover up their own malfeasance in using excessive force against plaintiff.

30. Following the issuance of these false Inmate Misbehavior Reports, and after an initial administrative hearing in which Williamson and Friedlander repeated these false accusations, plaintiff was found guilty of the charges and incurred severe punishment, including but not limited to being confined to the prison's Special Housing Unit (SHU).

31. Thereafter, plaintiff was confined to the SHU for a period of several months, where he underwent conditions of confinement that were atypical of and much more severe than the conditions of confinement of those in general population.

32. During plaintiff's confinement to the SHU, based upon orders from DOCCS administration, a second administrative hearing was held with respect to the Inmate Misbehavior Reports issued to plaintiff.

33. On or about September 1, 2020, after the conclusion of this second hearing, plaintiff was found not guilty of the charges contained in the Inmate Misbehavior Reports, and thereafter he was released from the SHU.

**The Malicious Prosecution**

34. On May 1, 2020, Officer Friedlander also initiated a criminal prosecution of plaintiff in the Town of Hope Justice Court by signing an accusatory instrument and supporting deposition in which he knowingly accused plaintiff of the crime of Harassment in the Second Degree, a crime of which plaintiff was innocent and of which Friedlander knew plaintiff to be innocent.

35. In support of this prosecution, Friedlander also knowingly made false statements about plaintiff to prosecutors, including but not limited to stating that plaintiff spat at Friedlander and struck Friedlander in the knees, and that as a result of plaintiff's actions Friedlander sustained serious and painful physical injuries.

36. The aforementioned false statements by Friedlander were intended to, and likely would have had the effect of, convincing a judge and/or jury that plaintiff was guilty of the crime with which Friedlander charged him.

37. Friedlander did not have probable cause to believe that plaintiff was guilty of the crime with which he was charged or that plaintiff had engaged in any of the conduct alleged by Friedlander.

38. Friedlander's prosecution of plaintiff was undertaken with malice, and was designed to coverup Friedlander's malfeasance in connection with his use of excessive force against plaintiff.

39. On September 9, 2021, after having been prosecuted for over sixteen months, the criminal charge against plaintiff was dismissed and the criminal proceeding initiated by Friedlander terminated favorably to plaintiff.

40. In the interim, however, as a combined result of the prosecution of plaintiff by Friedlander, and the false Inmate Misbehavior Reports issued by Friedlander and Williamson, plaintiff suffered a significant deprivation of liberty, including but not limited to being confined to the SHU for several months and having his date of release from DOCCS custody be postponed for a period of approximately seven months.

*****************

41. All of the actions of defendants alleged herein were intentional and malicious in nature.

42. As a result of the combined actions of defendants herein, plaintiff suffered and continues to suffer from severe physical and emotional injuries, suffered a significant deprivation of liberty, underwent and continues to undergo severe pain and suffering and loss of enjoyment of life, and has been otherwise damaged.

**FIRST CAUSE OF ACTION AGAINST WILLIAMSON, DRAPALA, BODNAR, FRIEDLANDER, DONOVAN, LAWRENCE, BURNS, GARCIA and PADGETT**
**(42 USC § 1983: Excessive Force—Eighth Amendment)**

43. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

44. The aforementioned acts by these defendants constituted a use of excessive force against plaintiff in violation of the rights guaranteed to plaintiff under the Eighth Amendment to the US Constitution to be free from cruel and unusual punishment.

45. As a result thereof, plaintiff is entitled to recover damages from these defendants pursuant to 42 USC § 1983.

**SECOND CAUSE OF ACTION AGAINST ALL NAMED DEFENDANTS**
**(42 USC § 1983: Failure to Intervene—Eighth Amendment)**

46. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

47. The aforementioned conduct by these defendants in deliberately failing to intervene in the illegal uses of force by their fellow officers was in violation of the rights guaranteed to plaintiff under the Eighth Amendment to the US Constitution to be free from cruel and unusual punishment.

48. As a result thereof, plaintiff is entitled to recover damages from these defendants pursuant to 42 USC § 1983.

### THIRD CAUSE OF ACTION AGAINST WILLIAMSON and FRIEDLANDER
### (42 USC § 1983: Issuance of False Misbehavior Reports—
### First and Fourteenth Amendments)

49. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

50. The aforementioned conduct of these defendants in knowingly issuing false Inmate Misbehavior Reports against plaintiff in retaliation for plaintiff having complained about his conditions of confinement was in violation of the rights guaranteed to plaintiff under the First Amendment to the US Constitution to engage in free speech and to petition the government for redress of grievances, and was in violation of plaintiff's rights to substantive due process guaranteed by the Fourteenth Amendment to the US Constitution.

51. As a result thereof, plaintiff is entitled to recover damages from these defendants pursuant to 42 USC § 1983.

### FOURTH CAUSE OF ACTION AGAINST FRIEDLANDER
### (42 USC § 1983: Malicious Prosecution: Fourth and Fourteenth Amendments)

52. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

53. The aforementioned conduct by Friedlander in maliciously causing plaintiff to be prosecuted for a crime of which Friedlander knew plaintiff to be innocent was in violation of plaintiff's rights under the Fourth Amendment to the US Constitution not to be subject to unreasonable seizures, and was in violation of plaintiff's right to

substantive due process guaranteed under the Fourteenth Amendment to the US Constitution.

54. As a result thereof, plaintiff is entitled to recover damages from Friedlander pursuant to 42 USC § 1983.

### FIFTH CAUSE OF ACTION AGAINST FRIEDLANDER
**(42 U.S.C. § 1983: Denial of Right to Fair Trial:
Fifth, Sixth, and Fourteenth Amendments)**

55. Plaintiff repeats and realleges each and every allegation set forth above as thought fully set forth herein.

56. That the aforementioned false statements and accusations made by Friedlander against plaintiff, and the resulting deprivation of plaintiff's liberty, constituted a denial of plaintiff's right to a fair trial, in violation of rights guaranteed to plaintiff under the Fifth, Sixth, and Fourteenth Amendments to the US Constitution.

57. As a result thereof, plaintiff is entitled to recover damages from Friedlander pursuant to 42 USC § 1983.

WHEREFORE, plaintiff seeks judgment against defendants, and each of them, for compensatory damages and punitive damages in an amount to be determined by a jury, and plaintiff also seeks attorney's fees against defendants pursuant to 42 USC § 1988, together with interest, costs, and disbursements of this action.

Dated: New York, New York
December 5, 2022

                                                Yours, etc.
                                                Sivin, Miller & Roche, LLP

                                                By <u>s/ Edward Sivin</u>
                                                     Edward Sivin
                                                Attorneys for plaintiff
                                                20 Vesey St., Suite 1400
                                                New York, NY  10007
                                                (212) 349-0300